**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ENTERED
06/15/2020

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HORNBECK OFFSHORE SERVICES, INC., *et al.*,[1] | ) | Case No. 20-32679 (DRJ) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) | **Re: ECF Nos. 5 and 90** |

**FINAL ORDER (A) AUTHORIZING THE DEBTORS
TO OBTAIN POSTPETITION FINANCING, (B) AUTHORIZING THE DEBTORS
TO USE CASH COLLATERAL, (C) GRANTING LIENS  AND PROVIDING CLAIMS
WITH SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (D) GRANTING
ADEQUATE PROTECTION TO THE PREPETITION SECURED PARTIES,
(E) MODIFYING THE AUTOMATIC STAY, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "**DIP Motion**")[2] of Hornbeck Offshore Services, Inc.

("**Parent Borrower**"), Hornbeck Offshore Services, LLC (together with Parent Borrower,

the "**Borrowers**") and their affiliated debtors (the "**Debtor DIP Guarantors**"), each as a debtor

and  debtor-in-possession  (collectively,  the  "**Debtors**")  in  the  above-captioned  cases

(the "**Chapter 11 Cases**") and pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1),

364(c)(2), 364(c)(3), 364(d)(1), 364(e), 363(m), 503, 506(c) and 507 of title 11 of the United States

Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and

9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Rules 1075-1,

2002-1, 4001-1(b), 4002-1(i) and 9013-1 of the Bankruptcy Local Rules of the United States

---

[1]    Due to the large number of Debtors in these Chapter 11 Cases, for which joint administration has been granted, a complete list of the Debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list may be obtained on the website of the Debtors' proposed claims and noticing agent at http://cases.stretto.com/hornbeck.  The location of the Debtors' service address is:  8 Greenway Plaza, Suite 1525, Houston, Texas 77046.

[2]    Capitalized terms used but not immediately defined have the meanings given to them in the DIP Motion.

Bankruptcy Court for the Southern District of Texas (the "**Local Bankruptcy Rules**") and the

Procedures for Complex Chapter 11 Bankruptcy Cases promulgated by the United States

Bankruptcy Court for the Southern District of Texas (the "**Court**"), seeking entry of an interim

order (the "**Interim Order**") and a final order (this "**Final Order**" and, together with the Interim

Order, the "**DIP Orders**") providing, among other things:

> (i)  authorization for the Borrowers to obtain postpetition financing as set forth in the DIP Documents (as defined herein) (the "**DIP Financing**"), and for the Debtor DIP Guarantors to guaranty the obligations (the "**DIP Obligations**") of the Borrowers in connection with the DIP Financing (the Debtor DIP Guarantors together with the Borrowers, the "**Debtor DIP Loan Parties**"), consisting of a senior secured superpriority debtor-in-possession term loan credit facility (the "**DIP Facility**"), in an aggregate principal amount of up to $75 million (the loans made thereunder, the "**DIP Loans**"), with $50 million having been drawn upon entry of the Interim Order and $25 million to be drawn subject to and upon entry of this Final Order, pursuant to the terms and conditions of that certain *Superpriority Debtor-in-Possession Term Loan Agreement* (as the same may be amended, restated, supplemented, waived or otherwise modified from time to time, the "**DIP Credit Agreement**"), by and among the Borrowers, and Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**DIP Agent**") for and on behalf of the lenders party thereto (the "**DIP Lenders**" and, together with the DIP Agent, the "**DIP Secured Parties**"), substantially in the form of **Exhibit A**, attached to the DIP Motion;

> (ii)  authorization for the Debtors to execute and deliver the DIP Credit Agreement, any other agreements, instruments, pledge agreements, guarantees, security agreements, mortgages, control agreements, notes, other Loan Documents (as defined in the DIP Credit Agreement) and any other documents related thereto (as amended, restated, supplemented, waived or modified from time to time, and, collectively with the DIP Credit Agreement, the "**DIP Documents**"), and to perform their respective obligations thereunder and all such other and further acts as may be necessary, appropriate or desirable in connection with the DIP Documents;

> (iii)  authorization for the Debtors to cause the guarantor under the DIP Credit Agreement that is not a Debtor (the "**Non-Debtor DIP Loan Party**" and together with the Debtor DIP Loan Parties, the "**DIP Loan Parties**") to (A) guarantee the Debtors' obligations under the DIP Facility, (B) grant security interests and liens thereunder and (C) execute and deliver, and perform all such other further acts as may be required in connection with, the DIP Documents;

(iv)     authorization for the Debtor DIP Loan Parties to use the DIP Facility (A) for the ABL Refinancing (as defined herein) and (B) for working capital and general corporate purposes of the Debtor DIP Loan Parties as approved by this Court, and in all respects in accordance with the DIP Documents and subject to the Budget (as defined in the DIP Credit Agreement and including the Permitted Variance in all respects (as defined in the DIP Credit Agreement), the "**Approved Budget**"), and (C) for the Adequate Protection Obligations (as defined herein);

(v)     subject to the restrictions set forth in the DIP Documents, the Interim Order, and this Final Order, authorization for the Debtors to use the Prepetition Collateral (as defined herein), including Cash Collateral (as defined herein), subject to the Approved Budget, and provide adequate protection to the Prepetition Secured Parties (as defined herein) for any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), resulting from the imposition of the automatic stay, the Debtors' use, sale or lease of the Prepetition Collateral (including Cash Collateral) and the priming of their respective interests in the Prepetition Collateral (including Cash Collateral), including by the Carve Out (as defined herein);

(vi)     authorization for the Debtors to pay the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable to the extent provided in, and in accordance with, the DIP Documents;

(vii)     authorization for the Debtors to make certain Stipulations with respect to the Prepetition Debt Documents (as defined herein) and the liens and security interests arising therefrom;

(viii)     the granting to the DIP Secured Parties of allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, payable from and having recourse to all assets of the Debtor DIP Loan Parties, subject only to the Carve Out;

(ix)     the granting to the DIP Secured Parties of liens pursuant to section 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Debtor DIP Loan Parties' estates (other than certain customarily excluded assets) and all proceeds thereof, including any Avoidance Proceeds (as defined herein), subject only to the Carve Out and the Non-Primed Excepted Liens;[3]

---

3    "**Non-Primed Excepted Liens**" means, (a) the Permitted Prior Liens (as defined herein) and (b) other than the existing Prepetition Liens in favor of the Prepetition Term Loan Secured Parties created under the Prepetition Debt Documents, all other (x) valid, perfected and unavoidable liens or security interests in existence as of the Petition Date or (y) valid and unavoidable liens or security interests in existence for amounts outstanding as of the Petition Date that are perfected after the Petition Date as permitted by Section 546(b) of the Bankruptcy Code,

(x)     waivers of (a) the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined herein) (together, the "**Collateral**") pursuant to section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code; and

(xi)    modification of the automatic stay to the extent set forth herein.

The Court having considered the relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Morgan Suckow In Support of the Debtors' Emergency Motion Seeking Entry of Interim and Final Orders (A)(I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition to the Prepetition Lenders, (V) Modifying Automatic Stay, (VI) Scheduling a Final Hearing and (B) Granting Related Relief* (the "**DIP Declaration**"), the *Declaration of James O. Harp, JR., Executive Vice President and Chief Financial Officer of Hornbeck Offshore Services, Inc. In Support of the Chapter 11 Petitions and the First Day Motions* (the "**First Day Declaration**"), the DIP Documents, and the evidence submitted and arguments made by the Debtors at the Interim Hearing held on May 20, 2020 (the "**Interim Hearing**") and the final hearing held on June 15, 2020 (the "**Final Hearing**"); and notice of the Interim Hearing and Final Hearing having been given in accordance with Bankruptcy Rules 2002 and 4001(b), (c) and (d), and all applicable Local Bankruptcy Rules; and the Interim Hearing and the Final Hearing having been held and concluded; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and the Court having entered the Interim Order on May 20, 2020 [ECF No. 90]; and it appearing that approval of the relief requested in the DIP Motion is fair and reasonable and in the best interests of the Debtors and their estates, and is

---

but in each case under the foregoing clauses (x) and (y), only to the extent such valid, perfected and unavoidable liens arose by operation of law and are senior in priority to the obligations under the Prepetition Debt Documents, as applicable.

essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the Debtors' entry into the DIP Credit Agreement and other DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor;

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND THE FINAL HEARING BY THE DEBTORS, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:** [4]

A.    *Petition Date*.  On May 19, 2020 (the "**Petition Date**"), each of the Debtors[5] filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the Court.  On May 19, 2020, this Court entered an order approving the joint administration of the Chapter 11 Cases [EFC No 29].

B.    *Debtors in Possession*.  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.    *Interim Order*.  The Court entered the Interim Order on May 20, 2020 [ECF No. 90].

D.    *Jurisdiction and Venue*.  This Court has core jurisdiction over the Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(a)–(b) and 1334 and the *Amended Standing Order of Reference from the United States District Court for*

---

[4]    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

[5]    HOS WELLMAX Services, LLC filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court on March 31, 2020.

*the Southern District of Texas*, dated May 24, 2012.  Consideration of the DIP Motion constitutes

a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order consistent

with Article III of the United States Constitution.  Venue for the Chapter 11 Cases and proceedings

on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The

predicates for the relief sought herein are sections 105, 361, 362, 363(c), 363(e), 363(m) 364(c),

364(d)(1), 364(e) and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004 and 9014

and Local Bankruptcy Rules 2002-1, 4001-1(b), 4002-1(i) and 9013-1.

      E.    *Committee Formation*.  As of the date hereof, the United States Trustee for the

Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of

unsecured creditors in these Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code

(a "**Creditors' Committee**").

      F.    *Notice*.  The Final Hearing was scheduled and noticed pursuant to Bankruptcy Rule

4001(b)(2) and (c)(2).  Proper, timely, adequate and sufficient notice of the DIP Motion has been

provided in accordance with the Interim Order, the Bankruptcy Code, the Bankruptcy Rules and

the Local Bankruptcy Rules, and no other or further notice of the DIP Motion or the entry of this

Final Order shall be required.

      G.    *Debtors' Stipulations*.  Without prejudice to the rights of the Debtors' estates or

any other party in interest (but subject to the limitations thereon contained in paragraph 22 below),

and after consultation with their attorneys and financial advisors, the Debtors acknowledge, admit,

stipulate and agree that:

      (i)    *Prepetition ABL Credit Facility*.  Pursuant to that certain Senior Credit

Agreement dated June 28, 2019 (as amended, restated, amended and restated, supplemented,

waived, or otherwise modified and as in effect on the Petition Date, the "**Prepetition ABL Credit**

**Agreement**" and, collectively with the Senior Credit Agreement Fee Letter dated June 28, 2019 entered into in connection therewith (the "**Prepetition ABL Fee Letter**"), all other Loan Documents (as defined in the Prepetition ABL Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition ABL Documents**"), by and among the Parent Borrower, the guarantors party thereto (the "**Prepetition ABL Guarantors**"), Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**Prepetition ABL Agent**"), and the lenders party thereto (the "**Prepetition ABL Lenders**" and, together with the Prepetition ABL Agent and each other Secured Party (as defined in the Prepetition ABL Credit Agreement), the "**Prepetition ABL Secured Parties**"), the Prepetition ABL Lenders provided revolving credit and other financial accommodations to the Parent Borrower (the "**Prepetition ABL Credit Facility**").

(ii)     *Prepetition ABL Debt*.  As of the Petition Date, the Parent Borrower and the Prepetition ABL Guarantors were justly and lawfully indebted and liable to the Prepetition ABL Secured Parties, without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $50 million plus all accrued and unpaid interest, all Annual Collateral Eligibility Fees (as defined in the Prepetition ABL Fee Letter, the "**ABL Redemption Fee**"; the Prepetition ABL Lenders to whom the ABL Redemption Fee is owed, the "**Specified Lenders**"), all other Obligations (as defined in the Prepetition ABL Credit Agreement) and all other interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code (collectively, the "**Prepetition ABL Debt**"), which Prepetition ABL Debt was guaranteed on a joint and several basis by all of the Prepetition ABL Guarantors.  As a result of the filing of these Chapter 11 Cases,

the ABL Redemption Fee (which, for the avoidance of doubt, constituted Prepetition ABL Debt and, as a result of the conversion into the DIP Redemption Fee as set forth in the Interim Order, constitutes a DIP Obligation) is fully earned and due and payable in the amount of $3,000,000 as of the Petition Date.

(iii)   *Prepetition ABL Liens*.  As more fully set forth in the Prepetition ABL Documents, prior to the Petition Date, the Parent Borrower and the Prepetition ABL Guarantors granted to the Prepetition ABL Agent, for the benefit of itself and the other Prepetition ABL Secured Parties, a first priority security interest in and continuing lien on (the "**Prepetition ABL Liens**") the ABL Priority Collateral (as defined in the Prepetition ABL/Term Intercreditor Agreement (as defined herein)) (the "**Prepetition ABL Collateral**").

(iv)   *Prepetition 1L Term Loan Facility*.  Pursuant to that certain First Lien Term Loan Credit Agreement dated June 15, 2017 (as amended, restated, amended and restated, supplemented, waived or otherwise modified and as in effect on the Petition Date, the "**Prepetition 1L Term Loan Credit Agreement**" and, collectively with the First Lien Facility Lender Fee Letter dated June 15, 2017 entered into in connection therewith (the "**Prepetition 1L Fee Letter**"), the other Loan Documents (as defined in the Prepetition 1L Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition 1L Term Loan Documents**"), by and among the Borrowers, Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**Prepetition 1L Term Agent**"), and the lenders party thereto (the "**Prepetition 1L Term Lenders**" and, together with the Prepetition 1L Term Agent, the "**Prepetition 1L Term**

**Secured Parties**"), the Prepetition 1L Term Lenders provided term loans to the Borrowers (the "**Prepetition 1L Term Loan Facility**").

(v)     *Prepetition 1L Term Loan Debt.*  As of the Petition Date, the Borrowers and the guarantors under the Prepetition 1L Term Loan Documents (the "**Prepetition Term Loan Guarantors**") were justly and lawfully indebted and liable to the Prepetition 1L Term Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $350 million plus all accrued and unpaid interest, the Redemption Fee (as defined in the Prepetition 1L Fee Letter, the "**1L Redemption Fee**"), all other Indebtedness (as defined in the Prepetition 1L Term Loan Credit Agreement) and all other interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code (collectively, the "**Prepetition 1L Term Loan Debt**"), which Prepetition 1L Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition Term Loan Guarantors.  As a result of the filing of these Chapter 11 Cases, the 1L Redemption Fee (which, for the avoidance of doubt, constitutes Prepetition 1L Term Loan Debt and was fully earned as of the date of the Prepetition 1L Fee Letter) is due and payable in the amount of $5,116,950 as of the Petition Date.

(vi)     *Prepetition 1L Term Loan Liens.*  As more fully set forth in the Prepetition 1L Term Loan Documents, prior to the Petition Date, the Borrowers and the Prepetition Term Loan Guarantors granted to the Prepetition 1L Term Agent, for the benefit of itself and the Prepetition 1L Term Lenders, a security interest in and continuing lien on (the "**Prepetition 1L Term Loan Liens**") substantially all of their assets and property (the "**Prepetition 1L Term Loan Collateral**").

(vii)     *Prepetition 2L Term Loan Facility.*  Pursuant to that certain Second Lien Term Loan Credit Agreement dated February 7, 2019 (as amended, restated, amended and restated,

supplemented, waived or otherwise modified and as in effect on the Petition Date, the "**Prepetition 2L Term Loan Credit Agreement**" and, collectively with the other Loan Documents (as defined in the Prepetition 2L Term Loan Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified from time to time, the "**Prepetition 2L Term Loan Documents**"), by and among the Borrowers, Wilmington Trust, National Association, as administrative agent and collateral agent (in such capacities, the "**Prepetition 2L Term Agent**"), and the lenders party thereto (the "**Prepetition 2L Term Lenders**" and, together with the Prepetition 2L Term Agent, the "**Prepetition 2L Term Secured Parties**" and, together with the Prepetition ABL Secured Parties and the Prepetition 1L Term Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition 2L Term Lenders provided term loans to the Borrowers (the "**Prepetition 2L Term Loan Facility**").

(viii)    *Prepetition 2L Term Loan Debt.*  As of the Petition Date, the Borrowers and the Prepetition Term Loan Guarantors were justly and lawfully indebted and liable to the Prepetition 2L Term Secured Parties without defense, counterclaim or offset of any kind, in the aggregate principal amount of not less than $121.2 million plus all accrued and unpaid interest, all other Indebtedness (as defined in the Prepetition 2L Term Loan Credit Agreement) and all other interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition 2L Term Loan Debt**" and, collectively with the Prepetition ABL Debt and the Prepetition 1L Term Loan Debt (collectively, the "**Prepetition Secured Debt**"), which Prepetition 2L Term Loan Debt has been guaranteed on a joint and several basis by all of the Prepetition Term Loan Guarantors.

(ix)     *Prepetition 2L Term Loan Liens*.  As more fully set forth in the Prepetition 2L Term Loan Documents, prior to the Petition Date, the Borrowers and the Prepetition Term Loan Guarantors granted to the Prepetition 2L Term Agent, for the benefit of itself and the Prepetition 2L Term Lenders, a security interest in and continuing lien on (the "**Prepetition 2L Term Loan Liens**" and, together with Prepetition ABL Liens and the Prepetition 1L Term Loan Liens, the "**Prepetition Liens**") substantially all of their assets and property (the "**Prepetition 2L Term Loan Collateral**" and, together with the Prepetition ABL Collateral and the Prepetition 1L Term Loan Collateral, the "**Prepetition Collateral**").

(x)     *Intercreditor Agreements*.  That certain (a) ABL/Term Intercreditor Agreement dated June 28, 2019, by and among the Prepetition ABL Agent, the Prepetition 1L Term Agent, the Prepetition 2L Term Agent, the Borrowers, the Prepetition ABL Guarantors and the Prepetition Term Guarantors (as amended, restated, amended and restated, supplemented or otherwise modified and as in effect on the Petition Date, the "**Prepetition ABL/Term Intercreditor Agreement**") and (b) Intercreditor Agreement dated February 7, 2019, by and among the Borrowers, the Prepetition Term Loan Guarantors, the Prepetition 1L Term Agent and the Prepetition 2L Term Agent (as amended, restated, amended and restated, supplemented or otherwise modified and as in effect on the Petition Date, the "**Prepetition 1L/2L Intercreditor Agreement**" and, together with the Prepetition ABL/Term Intercreditor Agreement, the "**Prepetition Intercreditor Agreements**" and, collectively with the Prepetition ABL Documents, the Prepetition 1L Term Loan Documents and the Prepetition 2L Term Loan Documents, the "**Prepetition Debt Documents**") are, in each case, binding and enforceable against the Borrowers, the Prepetition ABL Guarantors and the Prepetition Term Loan Guarantors in accordance with their terms, and the Borrowers, the Prepetition ABL Guarantors and the

Prepetition Term Loan Guarantors are not entitled to take any actions that would be contrary to the provisions thereof.

(xi)     *Validity, Perfection and Priority of Prepetition ABL Liens and Prepetition ABL Debt*.  The Debtors acknowledge and agree that, as of the Petition Date, (a) the Prepetition ABL Liens on the Prepetition ABL Collateral were valid, binding, enforceable in accordance with the terms of the applicable Prepetition ABL Documents, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition ABL Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition ABL Liens were senior in priority over any and all other liens on the Prepetition ABL Collateral, subject only to certain liens senior by operation of law or otherwise permitted by the Prepetition ABL Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, not subordinated and senior in priority to the Prepetition ABL Liens as of the Petition Date, the "**Prepetition ABL Permitted Prior Liens**"); (c) the Prepetition ABL Debt constituted legal, valid, binding and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the applicable Prepetition ABL Documents; (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition ABL Liens or Prepetition ABL Debt exist, and no portion of the Prepetition ABL Liens or Prepetition ABL Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition ABL Secured Parties or any of their respective affiliates, agents, attorneys, advisors,

professionals, officers, directors or employees (in their capacities as such) arising out of, based upon or related to the Prepetition ABL Credit Facility; and (f) the Debtors waive, discharge and release any right to challenge any of the Prepetition ABL Debt, the priority of the Debtors' obligations thereunder and the validity, extent and priority of the Prepetition ABL Liens.

(xii)    *Validity, Perfection and Priority of Prepetition 1L Term Liens and Prepetition 1L Term Loan Debt*.  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition 1L Term Loan Liens on the Prepetition 1L Term Loan Collateral were valid, binding, enforceable, in accordance with the terms of applicable Prepetition 1L Term Loan Documents, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition 1L Term Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition 1L Term Loan Liens were senior in priority over any and all other liens on the Prepetition 1L Term Loan Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Collateral and (2) certain liens senior by operation of law or otherwise permitted by the Prepetition 1L Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, not subordinated and senior in priority to the Prepetition 1L Term Loan Liens as of the Petition Date, the "**Prepetition 1L Term Loan Permitted Prior Liens**"); (c) the Prepetition 1L Term Loan Debt constitutes legal, valid, binding and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the applicable Prepetition 1L Term Loan Documents; and (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition 1L Term Loan Liens or Prepetition 1L Term Loan Debt exist, and no portion of the Prepetition 1L Term Loan Liens or Prepetition 1L Term Loan Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant

to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition 1L Term Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees (in their capacities as such) arising out of, based upon or related to the Prepetition 1L Term Loan Facility; and (f) the Debtors waive, discharge and release any right to challenge any of the Prepetition 1L Term Loan Debt, the priority of the Debtors' obligations thereunder and the validity, extent and priority of the Prepetition 1L Term Loan Liens.

(xiii)    *Validity, Perfection and Priority of Prepetition 2L Term Liens and Prepetition 2L Term Loan Debt*.  The Debtors further acknowledge and agree that, as of the Petition Date, (a) the Prepetition 2L Term Loan Liens on the Prepetition 2L Term Loan Collateral were valid, binding, enforceable, non-avoidable and properly perfected and were granted to, or for the benefit of, the Prepetition 2L Term Secured Parties for fair consideration and reasonably equivalent value; (b) the Prepetition 2L Term Loan Liens were senior in priority over any and all other liens on the Prepetition 2L Term Loan Collateral, subject only to (1) the Prepetition ABL Liens on the Prepetition ABL Collateral, (2) the Prepetition 1L Term Loan Liens on the Prepetition 1L Term Loan Collateral and (3) certain liens senior by operation of law or otherwise permitted by the Prepetition 2L Term Loan Documents (solely to the extent any such permitted liens were valid, properly perfected, non-avoidable, not subordinated and senior in priority to the Prepetition 2L Term Loan Liens as of the Petition Date, the "**Prepetition 2L Term Loan Permitted Prior Liens**" and, collectively with the Prepetition ABL Permitted Prior Liens and the Prepetition 1L Term Loan Permitted Prior Liens, the "**Permitted Prior Liens**"); (c) the

14

Prepetition 2L Term Loan Debt constitutes legal, valid, binding and non-avoidable obligations of the Debtors, enforceable in accordance with the terms of the applicable Prepetition 2L Term Loan Documents; and (d) no offsets, recoupments, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition 2L Term Loan Liens or Prepetition 2L Term Loan Debt exist, and no portion of the Prepetition 2L Term Loan Liens or Prepetition 2L Term Loan Debt is subject to any challenge or defense, including avoidance, disallowance, disgorgement, recharacterization or subordination (equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of action or choses in action, including avoidance claims under chapter 5 of the Bankruptcy Code or applicable state law equivalents or actions for recovery or disgorgement, against any of the Prepetition 2L Term Secured Parties or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees (in their capacities as such) arising out of, based upon or related to the Prepetition 2L Term Loan Facility; and (f) the Debtors waive, discharge and release any right to challenge any of the Prepetition 2L Term Loan Debt, the priority of the Debtors' obligations thereunder and the validity, extent and priority of the Prepetition 2L Term Loan Liens.

(xiv) *Value of Prepetition ABL Liens and Prepetition ABL Claims*. The aggregate value of the Prepetition ABL Collateral substantially exceeded the aggregate amount of the Prepetition ABL Debt and the claims of the Prepetition ABL Secured Parties arising under, and secured by, the Prepetition ABL Documents (together with all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code) constituted allowed, secured claims within the meaning of sections 502 and 506 of the Bankruptcy Code.

(xv)     *No Control*.  None of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors by virtue of any of the actions taken with respect to, in connection with, related to or arising from any of the Prepetition Debt Documents.

(xvi)     *Release*.  In addition to any releases granted to the Released Parties (as defined below) pursuant to the Interim Order (which remain in full force and effect and binding on the Debtors to the extent set forth in the Interim Order and are unaffected by entry of this Final Order), effective upon entry of this Final Order, the DIP Loan Parties hereby absolutely and unconditionally release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives, solely in their respective capacities as such (collectively, the "**Released Parties**"), from any and all obligations and liabilities to the DIP Loan Parties (and their successors and assigns) and from any and all claims, counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (collectively, the "**Released Claims**") of any kind, nature or description, whether matured or unmatured, known or unknown, foreseen or unforeseen, liquidated or unliquidated, arising in law or equity, upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Debt Documents, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, and the obligations and financial obligations made thereunder, in each case that the DIP Loan Parties at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order.

(xvii)  *Cash Collateral*.  All of the Debtors' cash, including any cash in deposit accounts constitutes "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

H.  *Findings Regarding the DIP Financing and Use of Cash Collateral*.

(i)  Good and sufficient cause has been shown for the entry of this Final Order and for authorization of the Debtor DIP Loan Parties to obtain financing pursuant to the DIP Credit Agreement.

(ii)  The Debtor DIP Loan Parties have a need to obtain the DIP Financing and to use Prepetition Collateral (including Cash Collateral) to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers, employees and customers, to make payroll, to make capital expenditures, to refinance the Prepetition ABL Debt, to satisfy other working capital and operational needs and to fund expenses of these Chapter 11 Cases.  The access of the Debtor DIP Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Documents and other financial accommodations provided under the DIP Documents are necessary and vital to the preservation and maintenance of the going concern values of the Debtor DIP Loan Parties and to a successful reorganization of the Debtor DIP Loan Parties.

(iii)  The Debtor DIP Loan Parties are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtor DIP Loan Parties are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the

DIP Loan Parties (x) granting to the DIP Secured Parties, subject to the Carve Out and the Non-Primed Excepted Liens, the DIP Liens (as defined herein) and the DIP Superpriority Claims (as defined herein) and (y) subject to the Carve Out, incurring the Adequate Protection Obligations, in each case, under the terms and conditions set forth in this Final Order and the DIP Documents.

(iv)     Based on the DIP Motion, the DIP Declaration, the First Day Declaration and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations and the terms on which the Debtor DIP Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order and the DIP Documents are fair and reasonable, reflect the Debtor DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(v)     To the extent such consent is required, the Prepetition Secured Parties have consented or are deemed to have consented to the Debtor DIP Loan Parties' use of Cash Collateral and the other Prepetition Collateral, and the DIP Loan Parties' entry into the DIP Documents in accordance with and subject to the terms and conditions in this Final Order and the DIP Documents.

(vi)     The DIP Financing, the Adequate Protection Obligations and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, and the DIP Secured Parties, and all of the DIP Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation, all DIP Loans made to the DIP Loan Parties pursuant to the DIP Documents and any DIP Obligations shall be deemed to have been extended by the DIP Secured Parties and their respective affiliates in good faith, as that term is used in

section 364(e) of the Bankruptcy Code, and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

(vii)   The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Debtor DIP Loan Parties' continued use of the Prepetition Collateral (including Cash Collateral) to fund the administration of the Debtor DIP Loan Parties' estates and continued operation of their businesses (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens (each as defined herein)), in accordance with the terms hereof and the DIP Documents, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(m) of the Bankruptcy Code in the event that the Interim Order, this Final Order, or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.

(viii)   The Prepetition Secured Parties are entitled to the adequate protection provided in the Interim Order and this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Debtor DIP Loan Parties' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in the Interim Order, this Final Order, or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the

19

terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior) or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties, subject to any applicable provisions of the Prepetition Intercreditor Agreement, to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties and, except as provided in paragraph 22, the rights of any other party in interest, including the Debtors, to object to such relief are hereby preserved.

(ix)    The ABL Refinancing reflected the Debtor DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.  The Prepetition ABL Lenders and their affiliates that have provided prepetition secured debt to the Debtors would not otherwise consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Agent and the DIP Lenders would not be willing to provide the DIP Facility or extend credit to the Debtor DIP Loan Parties thereunder without the ABL Refinancing.  The ABL Refinancing benefitted the Debtors and their estates because it enabled the Debtors to obtain necessary financing critical to administering these Chapter 11 Cases and funding their operations.

(x)    Consummation of the DIP Financing and the use of Prepetition Collateral (including Cash Collateral), in accordance with this Final Order and the DIP Documents are in the best interests of the Debtor DIP Loan Parties' estates and consistent with the Debtor DIP Loan Parties' exercise of their fiduciary duties.  The DIP Motion and this Final Order comply with the requirements of Local Bankruptcy Rule 4001-1(b).

I.    *Non-Primed Excepted Liens; Continuation of Prepetition Liens*.  Nothing in the Interim Order or this Final Order shall constitute a finding or ruling by this Court that any alleged

20

Non-Primed Excepted Lien is valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, the Prepetition Secured Parties or a Creditors' Committee (if appointed), to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any alleged Non-Primed Excepted Lien and/or security interests, subject to the Prepetition Intercreditor Agreements. The right of a seller of goods to reclaim such goods under section 546(c) of the Bankruptcy Code is not a Non-Primed Excepted Lien and is expressly junior and subject to the Prepetition Liens and the DIP Liens. The Prepetition Liens, and the DIP Liens that prime the Prepetition Liens, are continuing liens and the DIP Collateral is and will continue to be encumbered by such liens in light of the integrated nature of the DIP Facility, the DIP Documents and the Prepetition Debt Documents.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and after due consideration and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1. *Financing Approved*. The relief sought in the DIP Motion is granted, the DIP Facility described herein is authorized and approved and the use of Cash Collateral is authorized, in each case subject to the terms and conditions set forth in the DIP Documents, the Approved Budget and this Final Order. All objections to this Final Order, to the extent not withdrawn, waived, settled, or resolved are hereby denied and overruled on the merits.

2. *Authorization of the DIP Financing and the DIP Documents*.

   (a) The Debtor DIP Loan Parties are hereby authorized on a final basis to, and to cause the Non-Debtor DIP Loan Party to continue performing all of their respective obligations

in accordance with, and subject to the terms of this Final Order and the DIP Documents and such other and further acts as may be necessary, appropriate or desirable in connection therewith.  The Borrowers were authorized by the Interim Order and are hereby authorized on a final basis to borrow money pursuant to the DIP Credit Agreement and the Debtor DIP Guarantors were authorized by the Interim Order and are hereby authorized on a final basis to guaranty, and to cause the Non-Debtor DIP Loan Party to guaranty, the Borrowers' DIP Obligations with respect to such borrowings, in each case up to an aggregate principal amount equal to $75 million ($50 million of which was borrowed upon entry of the Interim Order for the ABL Refinancing in accordance with the Interim Order and the DIP Documents), subject to any limitations on borrowing under the DIP Documents, which shall be used for all purposes permitted under the DIP Documents.

(b)  In furtherance of the foregoing and without further approval of this Court, each Debtor was, by the Interim Order, and hereby is authorized to, and to cause the Non-Debtor DIP Loan Party to, perform all acts, to make, execute and deliver all instruments, certificates, agreements and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), with any mortgages upon immovable property situated in Louisiana deemed to include, without limitation, a waiver of notice of nonpayment and demand for payment, waiver of appraisement, pact de non alienando, confession of judgment, sale by executory process, and the usual Louisiana security clauses, and to pay all fees and expenses in connection with or that may be reasonably required, necessary, or desirable for the DIP Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)     the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Debtor DIP Loan Parties, the DIP Agent and the Required Lenders (as defined in the DIP Credit Agreement, the "**Required DIP Lenders**") may agree, it being understood that no further approval of this Court shall be required for any authorizations, amendments, waivers, consents or other modifications to and payment of amounts owed under the DIP Documents and any fees and other expenses (including attorneys', accountants', appraisers' and financial advisors' fees and amounts, charges, costs, indemnities and other obligations paid in connection therewith) that do not (A) shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder (provided that no further approval of this Court shall be required for the imposition of any default rate in accordance with the terms of the DIP Credit Agreement), (B) increase existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) or (C) shorten the Case Milestones (as defined herein) set forth in the DIP Documents.

(iii)   the non-refundable payment to the DIP Agent or the DIP Secured Parties, as the case may be, of all fees payable under the DIP Documents including, without limitation, unused facility fees, servicing fees, audit fees, liquidator

fees, structuring fees, administrative agent's or collateral agent's fees, upfront fees, closing fees, commitment fees, exit fees, backstop fees, agency fees and/or professional fees (which fees were paid in accordance with the terms of such DIP Documents, the Interim Order, and this Final Order and are irrevocable, and which were, and shall be deemed to have been, approved upon entry of the Interim Order, whether or not such fees arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Documents (and in any separate letter agreements between any or all DIP Loan Parties, on the one hand, and any of the DIP Secured Parties, on the other, in connection with the DIP Financing) and the costs and expenses as may be due from time to time (giving effect to the Review Period (as defined herein)), including, without limitation, the reasonable and documented fees and expenses of the professionals retained by (A) the DIP Agent, including Thompson Hine LLP, (B) the Secured Lender Group (as defined in that certain Restructuring Support Agreement, dated April 10, 2020 by and among, *inter alia,* the DIP Loan Parties and the DIP Lenders (the "**Restructuring Support**

24

**Agreement**")), including Davis Polk & Wardwell LLP, Ducera Partners, LP, Blank Rome LLP, Creel, García-Cuéllar, Aiza y Enríquez, S.C., Pinheiro Neto Advogados, Porter Hedges LLP, each other local and special counsel and such other advisors as permitted under the DIP Credit Agreement (collectively, the "**Secured Lender Group Professionals**"), and (C) the Noteholder Committee (as defined in the Restructuring Support Agreement), so long as such fees and expenses were not incurred (x) after the date that the Restructuring Support Agreement has been terminated with respect to the Consenting Unsecured Noteholders holding at least 66.7% of the aggregate principal amount of outstanding Unsecured Notes or after the date that the Backstop Commitment Agreement has been terminated, (y) in connection with an investigation into any estate claims or causes of action with respect to the Prepetition Secured Debt or the Prepetition Liens or (z) in furtherance of any breach or termination of the Restructuring Support Agreement by the Consenting Unsecured Noteholders, limited to Milbank LLP, Seward & Kissel LLP and Cole Schotz P.C. (the "**Unsecured Noteholder Committee Professionals**" and, together with the professionals retained by the DIP Agent and the Secured Lender Group Professionals, the "**DIP Fees and Expenses**"), without the need to file retention motions or fee applications or to provide notice to any party; and

(iv)    the performance of all other acts necessary, appropriate and/or desirable under or in connection with the DIP Documents.

3.      *DIP Obligations*.  Upon execution and delivery of the DIP Documents, the DIP

Documents constituted, pursuant to the Interim Order, and hereby shall constitute, on a final basis,

legal, valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable against

each DIP Loan Party and their estates in accordance with the terms of the DIP Documents and this

Final Order, and any successors thereto, including any trustee appointed in the Chapter 11 Cases,

or in any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Chapter

11 Cases, or in any other proceedings superseding or related to any of the foregoing (collectively,

the "**Successor Cases**").  Upon execution and delivery of the DIP Documents, the DIP Obligations

included and will continue to include all loans and any other indebtedness or obligations,

contingent or absolute, which may now or from time to time be owing by any of the DIP Loan

Parties to the DIP Agent or any of the DIP Secured Parties, in each case, under, or secured by, the

DIP Documents, the Interim Order or this Final Order, including all principal, accrued interest,

costs, fees, expenses and other amounts under the DIP Documents.  The DIP Loan Parties shall be

jointly and severally liable for the DIP Obligations.  The DIP Obligations shall be due and payable,

without notice or demand, and the use of Cash Collateral shall automatically cease on the

Termination Date (as defined in the DIP Documents).  No obligation, payment, transfer or grant

of collateral security hereunder or under the DIP Documents (including any DIP Obligation or DIP

Liens) shall be stayed, restrained, voidable, avoidable or recoverable, under the Bankruptcy Code

or under any applicable law (including under sections 502(d), 544, and 547 to 550 of the

Bankruptcy Code or under any applicable state Uniform Voidable Transactions Act, Uniform

Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or similar statute or common law),

or subject to any avoidance, reduction, setoff, recoupment, offset, recharacterization,

subordination (whether equitable, contractual or otherwise), counterclaim, cross-claim, defense or

any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

4.  *Refinancing of the Prepetition ABL Debt.*  Upon entry of the Interim Order and the funding of the DIP Loans under the DIP Facility, the Debtors were authorized and directed to pay in full in cash all Prepetition ABL Debt, other than the ABL Redemption Fee, which was deemed to have been cancelled and reissued as a redemption fee under the DIP Facility in the amount of $3,000,000 (the "**DIP Redemption Fee**") for the benefit of the Specified Lenders (collectively, such payment in cash of the Prepetition ABL Debt and the replacement of the ABL Redemption Fee with the DIP Redemption Fee, the "**ABL Refinancing**" and, the date of such occurrence, the "**ABL Refinancing Date**").  The DIP Redemption Fee shall be due and payable in cash upon the earliest of the Termination Date and the first date on which at least 50% of the principal amount of the DIP Loans have been (in one or more transactions) prepaid, repaid, repriced, accelerated and/or effectively refinanced through any amendment of the DIP Facility or as otherwise agreed by the Specified Lenders, including as set forth in the Approved Prepackaged Plan (as defined herein).  The ABL Refinancing shall be final, subject only to the right of parties in interest (other than the DIP Loan Parties, the DIP Lenders, and the Consenting Creditors (as defined in the Restructuring Support Agreement)) to seek a determination in accordance with paragraph 22 below that the ABL Refinancing resulted in the payment of an unsecured prepetition claim of Prepetition ABL Secured Parties.  The ABL Refinancing shall be deemed indefeasible and the Prepetition ABL Debt shall be discharged when both (a) (i) all of the Prepetition ABL Debt (including all Prepetition ABL Adequate Protection Obligations), other than the ABL Redemption Fee, has been paid in full in cash and (ii) the ABL Redemption Fee has been reissued under the DIP Facility as the DIP Redemption Fee for the benefit of the Specified Lenders and (b) (i) the

Challenge Period (as defined herein) has expired, if no timely and proper Challenge Proceeding (as defined herein) has been commenced in accordance with paragraph 22 with respect to the Prepetition ABL Debt or against the Prepetition ABL Secured Parties or (ii) if a Challenge Proceeding has been timely and properly commenced prior to the expiration of the Challenge Period, a final disposition of such adversary proceeding or contested matter has been entered in favor of the Prepetition ABL Secured Parties by order of a court of competent jurisdiction (the "**ABL Satisfaction Date**").   Any amounts disgorged in connection with any such objection or determination and actually received by the Debtors in cash shall be applied, first, to pay the DIP Redemption Fee and, second, to repay any other DIP Obligations.  The Prepetition Secured Parties would not consent to the use of their Cash Collateral or the subordination of their liens to the DIP Liens, and the DIP Secured Parties would not be willing to provide the DIP Financing or extend credit and other financial accommodations to the DIP Loan Parties thereunder, without the ABL Refinancing with the DIP Facility and the conversion of the ABL Redemption Fee into the DIP Redemption Fee, as set forth herein.  Notwithstanding anything to the contrary herein, in the event the *Debtors' Joint Prepackaged Chapter 11 Plan of Reorganization* [ECF No. 7] (as amended, restated, supplemented or otherwise modified in a manner acceptable to the Specified Lenders in their sole discretion, the "**Approved Prepackaged Plan**") is consummated, the DIP Redemption Fee shall receive the treatment set forth therein.

     5.    *Carve Out*.

     (a)    <u>Carve Out</u>.  As used in this Final Order, the term "**Carve Out**" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the Carve Out Trigger Notice (as defined herein)); (ii) all reasonable fees and

expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to Carve Out Trigger Notice); (iii) all unpaid fees and expenses, to the extent allowed by interim order, procedural order, or final order of the Court or otherwise at any time (the "**Allowed Professional Fees**"), incurred by persons or firms retained by the Debtors pursuant to section 327, 328 or 363 of the Bankruptcy Code and a Creditors' Committee (if appointed) pursuant to section 328 or 1103 of the Bankruptcy Code (collectively, the "**Professional Persons**") at any time before or on the first business day following delivery of a Carve Out Trigger Notice, whether allowed by the Court prior to or after the delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $3.5 million incurred after the first business day following delivery of a Carve Out Trigger Notice (the "**Post-Carve Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by the Applicable Agent[6] to the Debtors, their lead restructuring counsel, the U.S. Trustee and counsel to the Creditors' Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and, with respect to a Carve Out Trigger Notice delivered by the DIP Agent, acceleration of the DIP Obligations under the DIP Facility and, with respect to a Carve Out Trigger Notice delivered by the Cash Collateral Agent, the termination of the use of Cash Collateral, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

---

[6]  The "**Applicable Agent**" shall mean (a) at all times while there are any outstanding Commitments (as defined in the DIP Credit Agreement) or DIP Obligations, the DIP Agent (acting at the direction of the Required DIP Lenders) and (b) at all other times, (i) the Prepetition 1L Term Agent (acting at the direction of Required Lenders (as defined in the Prepetition 1L Term Loan Credit Agreement, the "**Required 1L Term Lenders**")) and (ii) until the ABL Satisfaction Date, the Prepetition ABL Agent (acting at the direction of the Required Lenders (as defined in the Prepetition ABL Credit Agreement, the "**Required ABL Lenders**")) (collectively (i) and (ii), as applicable, the "**Cash Collateral Agent**").  The "**Applicable Required Lenders**" shall mean, as applicable, the Required DIP Lenders, the Required 1L Term Lenders and the Required ABL Lenders.

(b)      <u>Delivery of Weekly Fee Statements</u>.  Not later than 7:00 p.m. New York time on the third business day of each week starting with the first full calendar week following entry of the Interim Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses (collectively, "**Estimated Fees and Expenses**") incurred during the preceding week by such Professional Person (through Saturday of such week, the "**Calculation Date**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Weekly Statement**"); *provided that*, within one business day of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "**Final Statement**") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date.  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person; *provided*, *that* such Professional Person shall be entitled to be paid any unpaid amount of Allowed Professional Fees in excess of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person from a reserve to be funded by the Debtors from all cash

on hand as of such date and any available cash thereafter held by any Debtor pursuant to paragraph 5(c) below.  The requirements of this paragraph 5(b) shall not apply to Guggenheim Securities, LLC.

(c)     Carve Out Reserves.  On the day on which a Carve Out Trigger Notice is delivered to the Debtors with a copy to counsel to the Creditors' Committee (the "**Termination Declaration Date**"), the Carve Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the then-unpaid amounts of the Allowed Professional Fees.  The Debtors shall deposit and hold such amounts in a segregated account at the DIP Agent in trust to pay such then unpaid Allowed Professional Fees (the "**Pre-Carve Out Trigger Notice Reserve**") prior to any and all other claims.  On the Termination Declaration Date, after funding the Pre-Carve Out Trigger Notice Reserve, the Debtors shall utilize all remaining cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap.  The Debtors shall deposit and hold such amounts in a segregated account at the Applicable Agent in trust to pay such Allowed Professional Fees benefiting from the Post-Carve Out Trigger Notice Cap (the "**Post-Carve Out Trigger Notice Reserve**" and, together with the Pre-Carve Out Trigger Notice Reserve, the "**Carve Out Reserves**") prior to any and all other claims.

(d)     All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (a)(i) through (a)(iii) of the definition of Carve Out set forth above (the "**Pre-Carve Out Amounts**"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Secured

31

Parties, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments (as defined in the DIP Credit Agreement) have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities.

(e)     All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "**Post-Carve Out Amounts**"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Agent for the benefit of the DIP Secured Parties, unless the DIP Obligations have been indefeasibly paid in full, in cash, and all Commitments have been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities.

(f)     Notwithstanding anything to the contrary in the DIP Documents or this Final Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth in this paragraph 5, then any excess funds in one of the Carve Out Reserves following the payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively (subject to the limits contained in the Post-Carve Out Trigger Notice Cap), shall be used to fund the other Carve Out Reserve, up to the applicable amount set forth in subparagraph 5(c), prior to making any payments to the DIP Agent or the Prepetition Secured Parties, as applicable.

(g)     Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve Out Trigger Notice, the DIP Agent and the Prepetition 1L Term Agent shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Carve Out Reserves have been

fully funded, but shall have a security interest in any residual interest in the Carve Out Reserves, with any excess paid in accordance with subparagraphs 5(d) and 5(e).

(h)     Further, notwithstanding anything to the contrary in this Final Order, (i) the failure of the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve Out and (ii) in no way shall any Approved Budget, Carve Out, Post-Carve Out Trigger Notice Cap, Carve Out Reserves or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.  For the avoidance of doubt and notwithstanding anything to the contrary in this Final Order, the DIP Documents or in any Prepetition Debt Documents, the Carve Out shall be senior to all liens and claims securing the DIP Facility, the Adequate Protection Liens, the 507(b) Claims (as defined herein) and any and all other forms of adequate protection, liens or claims securing the DIP Obligations or the Prepetition Secured Debt.

(i)     <u>Payment of Allowed Professional Fees Prior to the Termination Declaration Date</u>.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall not reduce the Carve Out.

(j)     <u>No Direct Obligation To Pay Allowed Professional Fees</u>.  None of the DIP Agent, the DIP Lenders or the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with the Chapter 11 Cases or any Successor Cases under any chapter of the Bankruptcy Code.  Nothing in the Interim Order, this Final Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

33

(k)     Payment of Carve Out on or after the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.

6.      *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed superpriority administrative expense claims against the Debtor DIP Loan Parties (without the need to file any proof of claim) with priority over any and all claims against the Debtor DIP Loan Parties (other than the Carve Out), now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under section 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtor DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code or any other avoidance actions under the Bankruptcy Code or applicable state-law equivalents ("**Avoidance Actions**"), but including any proceeds or property recovered, unencumbered or otherwise, from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")) in accordance with the DIP Documents, the Interim Order and this Final Order,

subject only to the Carve Out and the Non-Primed Excepted Liens.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that the Interim Order, this Final Order or any provision hereof or thereof is vacated, reversed or modified, on appeal or otherwise.  The DIP Superpriority Claims shall be senior to the 507(b) Claims.

7.      *DIP Liens*.  As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation or filing by the Debtor DIP Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or the possession or control by the DIP Agent of, or over, any Collateral, security interests and liens are hereby granted to the DIP Agent, for its own benefit and the benefit of the DIP Lenders (all property identified in subparagraphs 7(a) through 7(c) below (but excluding in each case Excluded Assets) being collectively referred to as the "**DIP Collateral**"), subject only to the Non-Primed Excepted Liens and the payment of the Carve Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to the Interim Order, this Final Order, and the DIP Documents, the "**DIP Liens**"):

(a)      *Liens On Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected first priority security interest in and lien upon all prepetition and postpetition property of the Debtor DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date, is not subject to a Non-Primed Excepted Lien, including, without limitation, any and all unencumbered cash of the Debtor DIP Loan Parties (whether maintained with the DIP Agent or otherwise) (the "**Unencumbered Property**"), in each case other than (i) the Excluded Assets (as

defined in the DIP Documents), but including the proceeds of such Excluded Assets that do not otherwise constitute such Excluded Assets, and (ii) the Avoidance Actions, but subject to the Carve Out, including Avoidance Proceeds;

(b)      *Liens Priming Certain Prepetition Secured Parties' Liens*.   Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority priming security interest in and lien upon all Prepetition Collateral, regardless of where located, regardless whether or not any liens on such assets are voided, avoided, invalidated, lapsed or unperfected (the "**DIP Priming Liens**"), which shall prime, in all respects, the interests of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens), and which shall be (i) subject and junior to the Carve Out in all respects, (ii) junior to the Non-Primed Excepted Liens, (iii) senior to the Prepetition Liens and (iv) senior to the Adequate Protection Liens;

(c)      *Liens Junior to Certain Other Liens*.   Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully perfected junior security interest in and lien upon all prepetition and postpetition property of the Debtor DIP Loan Parties to the extent such property was, as of the Petition Date, subject to Non-Primed Excepted Liens, which liens shall be (i) subject and junior to the Carve Out in all respects, (ii) junior to the Non-Primed Excepted Liens, (iii) senior to the Prepetition Liens and (iv) senior to the Adequate Protection Liens.

8.      *Protection of DIP Secured Parties' Rights*.

(a)      So long as there are any DIP Obligations outstanding or any DIP Lenders have any outstanding Commitments, then with respect to any DIP Collateral, the Prepetition

Secured Parties shall:  (i) have no right to, and shall take no action to, foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Agreements, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral, or the Adequate Protection Liens except to the extent required by an order of this Court; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of all DIP Obligations and termination of the Commitments), to the extent such transfer, disposition, sale or release is permitted under the applicable DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such Collateral unless, solely as to this clause (iii), (x) the DIP Agent (acting at the direction of the Required DIP Lenders) or the DIP Secured Parties file financing statements or other documents to perfect the liens granted pursuant to the Interim Order, this Final Order or the DIP Documents, or as may be required by applicable law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date or (y) such actions are necessary or desirable to evidence that the DIP Agent (for the benefit of the DIP Lenders) has a priming security interest in such Collateral relative to the security interest granted in such Collateral to the Prepetition Secured Parties, and such actions are approved by the DIP Agent (acting at the direction of the Required DIP Lenders); and (iv) deliver or cause to be delivered, solely at the request of the DIP Agent (acting at the direction of the Required DIP Lenders) and at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agents or the DIP Lenders or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion

of the DIP Collateral subject to any court-approved sale or disposition, to the extent permitted under the applicable DIP Documents.

(b)    Unless the Required DIP Lenders, the Required ABL Lenders (prior to the ABL Satisfaction Date) and the Required 1L Term Lenders shall have provided their prior written consent, all DIP Obligations and all Adequate Protection Obligations have been indefeasibly paid in full in cash and the lending commitments under the DIP Facility have terminated, there shall not be entered in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral or Prepetition Collateral and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and/or the 507(b) Claims except as expressly set forth in this Final Order or the DIP Documents; (ii) the use of Cash Collateral for any purpose other than as permitted in the DIP Documents or this Final Order; (iii) except as set forth in the DIP Documents, the return of goods pursuant to section 546(h) of the Bankruptcy Code (or other return of goods on account of any prepetition indebtedness) to any creditor of any Debtor; or (iv) any modification of any of the rights of the DIP Secured Parties or the Prepetition Secured Parties under the Interim Order, this Final Order or the DIP Documents with respect to any DIP Obligations, Adequate Protection Obligations or other obligations or rights under the Interim Order or this Final Order.  Notwithstanding any other provisions set forth herein, no modification of the DIP Redemption Fee, any of the rights of the Specified Lenders with respect to the DIP Redemption Fee or the obligations of the Debtors with respect to the DIP Redemption Fee shall be valid without the prior written consent of such Specified Lender in its sole discretion

and any such modification without such consent shall be deemed void *ab initio* and an Event of Default hereunder (which Event of Default cannot be waived without the consent of the Specified Lenders).

(c)     Until the DIP Obligations (excluding contingent indemnification obligations for which no claim has been asserted) have been indefeasibly paid in full in cash, the Debtors shall (i) maintain books, records, and accounts to the extent and as required by the DIP Documents; (ii) reasonably cooperate with, consult with, and provide to the DIP Secured Parties all such information and documents that any or all of the Debtors are obligated (including upon reasonable request by such parties) to provide under the DIP Documents or the provisions of this Final Order; (iii) upon reasonable advance notice, permit, the DIP Secured Parties, and their respective advisors to visit and inspect any of the Debtors' respective properties, to examine and make abstracts or copies from any of their respective books and records, to tour the Debtors' business premises and other properties, and to discuss, and provide advice with respect to, their respective affairs, finances, properties, business operations, and accounts with their respective officers, employees, independent public accountants and other professional advisors (other than legal counsel) as and to the extent required by the DIP Documents; (iv) permit the DIP Secured Parties, and their respective advisors to consult with the Debtors' management and advisors on matters concerning the Debtors' businesses, financial condition, operations and assets; and (v) upon reasonable advance notice, permit the DIP Secured Parties to conduct, at their discretion and at the Debtors' cost and expense, field audits, collateral examinations, liquidation valuations and inventory appraisals at reasonable times in respect of any or all of the DIP Collateral in accordance with the DIP Documents.

(d)     To the extent any Prepetition Secured Party has possession of any Collateral or has control with respect to any Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or exercise such control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Secured Parties and shall comply with the instructions of the DIP Agent (acting at the direction of the Required DIP Lenders) with respect to the exercise of such control, and the DIP Agent agrees, and shall be deemed, without incurring any liability or duty to any party, to maintain possession or control of any Prepetition Collateral in its possession or control as gratuitous bailee and/or gratuitous agent for perfection for the benefit of the Prepetition Secured Parties, including with respect to bank accounts.

(e)     Without requiring further order from the Bankruptcy Court and without the need for filing any motion for relief from the automatic stay or any other pleading, the automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Applicable Agent or the Applicable Required Lenders, immediately upon the occurrence and during the continuance of any Event of Default (as defined in the DIP Credit Agreement or as otherwise provided herein, in either case, an "**Event of Default**"), to (i) send written notice of the occurrence of an Event of Default (such notice, the "**Event of Default Notice**") to the Debtors, the U.S. Trustee, and any statutory committee appointed in these cases, (ii) without limitation and without prior notice, terminate, reduce or restrict the Commitments under the DIP Facility, pursuant to and subject to the terms and conditions set forth in the DIP Documents and in this Final Order, (iii) accelerate all applicable DIP Obligations to be immediately due and payable, without presentment, demand, protest, or other notice of any kind, all of which are expressly waived by the DIP Loan Parties, and (iv) except as otherwise provided below in this paragraph 8(e), terminate the authorization to use Cash Collateral.  Upon the

occurrence and during the continuation of an Event of Default, the Applicable Required Lenders or the Applicable Agent may file a motion on shortened notice seeking relief from the automatic stay (the "**Stay Relief Motion**") in order to permit the Applicable Lenders to exercise any or all of their rights and remedies set forth in the DIP Orders, the DIP Documents and the Prepetition Debt Documents, as applicable, including, without limitation, directing the Applicable Agent to foreclose on the Collateral, and satisfy the relevant DIP Obligations, DIP Superpriority Claims, DIP Liens, Adequate Protection Obligations, 507(b) Claims and Adequate Protection Liens.  The Debtors shall not object to the Stay Relief Motion being heard on shortened notice so long as the Stay Relief Motion is heard on at least three (3) business days' notice.  After the Applicable Required Lenders or the Applicable Agent has sent the Event of Default Notice, any obligation otherwise imposed on the DIP Lenders to provide any loans or advances under the DIP Facility shall be immediately suspended, and, until such time that the Stay Relief Motion has been adjudicated by the Court (the "**Notice Period**"), the Debtors may (i) use the proceeds of the DIP Facility (to the extent drawn prior to the occurrence of an Event of Default) or Cash Collateral solely to (a) fund operations in the ordinary course of business and in accordance with the DIP Credit Agreement and the Approved Budget and (b) to fund the Carve Out Reserves and (ii) seek a determination at the hearing on such Stay Relief Motion exclusively on the issue of whether an Event of Default has occurred.  Notwithstanding the occurrence of an Event of Default, the Maturity Date, and/or termination of the Commitments under the DIP Credit Agreement, all of the rights, remedies, benefits, and protections provided to the DIP Secured Parties and the Prepetition Secured Parties under the DIP Documents, the Interim Order and this Final Order, as applicable, shall survive.

(f)     In no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral, absent the express written consent of the DIP Agent (acting at the direction of the Required DIP Lenders), the Prepetition 1L Term Agent (acting at the direction of the Required 1L Term Lenders) and the Prepetition ABL Agent (acting at the direction of the Required ABL Lenders) (prior to the ABL Satisfaction Date), as applicable.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(g)     No rights, protections or remedies of the DIP Secured Parties or the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order or any DIP Documents, as applicable, shall be limited, modified or impaired in any way by (i) any actual or purported withdrawal of the consent of any party to the Debtor DIP Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtor DIP Loan Parties' authority to continue to use Cash Collateral or (iii) the terms of any other order or stipulation related to the Debtor DIP Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

(h)     If the Applicable Agent takes any enforcement action with respect to the Collateral, the applicable Prepetition Secured Parties and Debtor DIP Loan Parties (i) shall cooperate with the Applicable Agent (subject to the condition that no Prepetition Secured Party shall have any obligation or duty to take any action, or refrain from taking any action, that could reasonably be expected to result in the incurrence of any liability or damage to any Prepetition Secured Party) in its efforts to enforce its security interest in the Collateral and (ii) shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect the

42

Applicable Agent from enforcing its security interests in the Collateral; *provided* that the Prepetition Secured Parties shall be indemnified and held harmless to the extent provided in any applicable Prepetition Debt Document for any loss, liability or obligation incurred in connection with any of the foregoing.

9.     *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent (acting at the direction of the Required DIP Lenders), the Prepetition ABL Agent (acting at the direction of the Required ABL Lenders) (prior to the ABL Satisfaction Date) or the Prepetition 1L Term Agent (acting at the direction of the Required 1L Term Lenders), as the case may be, that holds a lien on the relevant asset, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties and nothing contained in the Interim Order or this Final Order shall be deemed to be a consent by the DIP Secured Parties or the Prepetition Secured Parties to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

10.     *Payments Free and Clear.*  Any and all payments or proceeds remitted to the DIP Agent (on its own behalf or on behalf of the DIP Lenders) or the Prepetition Secured Parties pursuant to the provisions of the DIP Orders or any subsequent order of the Court shall, subject to the reservation of rights set out in paragraph 22 of this Final Order with respect to the Prepetition Secured Parties, be irrevocably received free and clear of any claim, charge, assessment or other

liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

11.     *Use of Cash Collateral*.   The Debtor DIP Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order and the DIP Documents (including the Approved Budget), to use all Cash Collateral, and the Prepetition Secured Parties are directed promptly to turn over to the Debtor DIP Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Final Order, the Debtor DIP Loan Parties shall be enjoined and prohibited from, at any time, using the Cash Collateral absent further order of the Court.

12.     *Disposition of Collateral*.   Unless the DIP Obligations and the Prepetition Secured Debt are indefeasibly paid in full, in cash, upon the closing of a sale or other disposition of the DIP Collateral or Prepetition Collateral, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the Collateral other than in the ordinary course of business without the prior written consent of the Required DIP Lenders, the Required ABL Lenders (prior to the ABL Satisfaction Date) and the Required 1L Term Lenders (and no such consent shall be implied, from any other action, inaction or acquiescence by the DIP Secured Parties or the Prepetition Secured Parties, or from any order of this Court), except as otherwise permitted under the DIP Documents or otherwise ordered by the Court.   Except to the extent otherwise expressly provided in the DIP Documents or this Final Order and subject to the Carve Out, all proceeds from the sale, transfer, lease, encumbrance, or other disposition of any DIP Collateral (other than in the ordinary course of business) shall be remitted to the DIP Agent for application to the DIP

Obligations and then to the Prepetition ABL Agent or the Prepetition 1L Term Agent, as applicable, for application to the Prepetition Secured Debt, in each case, in accordance with the terms of this Final Order and the DIP Documents or the Prepetition Debt Documents, as the case may be.

13. *Adequate Protection of Prepetition Secured Parties*. The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, to adequate protection of their interests in the Prepetition Collateral from and after the Petition Date, for any reason provided for under the Bankruptcy Code, including, without limitation, the aggregate diminution in value of such Prepetition Secured Parties' interests in the Prepetition Collateral resulting from the depreciation, sale, lease or use by the Debtors (or other decline in value) of the Prepetition Collateral, the priming of the Prepetition 1L Term Loan Liens and the Prepetition 2L Term Loan Liens by the DIP Liens pursuant to the DIP Documents, the Interim Order and this Final Order and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (an "**Adequate Protection Claim**"). The Adequate Protection Claims shall be independent from, and survive any termination of, the DIP Credit Agreement or the Commitments thereunder. In consideration of the foregoing, as adequate protection, the Prepetition Secured Parties are hereby granted the following, in each case, subject to the Carve Out (collectively, the "**Adequate Protection Obligations**"):

(a) <u>Prepetition ABL Adequate Protection Liens</u>. Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition ABL Agent, for itself and for the benefit of the other Prepetition ABL Secured Parties, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a continuing,

45

binding, enforceable, valid, perfected replacement security interest in and lien on (the "**Prepetition ABL Adequate Protection Liens**") all of the DIP Collateral (it being understood that the Prepetition ABL Adequate Protection Liens shall attach to Avoidance Proceeds) to secure the Prepetition ABL Secured Parties' Adequate Protection Claims, subject and subordinate only to (i) the DIP Liens, (ii) the Carve Out and (iii) the Prepetition ABL Permitted Prior Liens and the liens described in clause (b) of the definition of Non-Primed Excepted Liens.

(b)     Prepetition 1L Term Loan Adequate Protection Liens.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition 1L Term Agent, for itself and for the benefit of the Prepetition 1L Term Lenders, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a continuing, binding, enforceable, valid, perfected replacement security interest in and lien on (the "**Prepetition 1L Term Loan Adequate Protection Liens**") all of the DIP Collateral (it being understood that the Prepetition 1L Term Loan Adequate Protection Liens shall attach to Avoidance Proceeds) to secure the Adequate Protection Claims of the Prepetition 1L Term Secured Parties, subject and subordinate only to (i) the DIP Liens, (ii) to the extent required pursuant to the Prepetition ABL/Term Intercreditor Agreement, the Prepetition ABL Adequate Protection Liens, (iii) the Carve Out and (iv) the Non-Primed Excepted Liens.

(c)     Prepetition 1L Term Loan Adequate Protection Payments.  The Prepetition 1L Term Agent, for itself and for the benefit of the Prepetition 1L Term Lenders, shall receive, until the indefeasible discharge of the Prepetition 1L Term Loan Debt, on the last business day of each month, an amount equal to the sum of all postpetition unpaid interest accruing, in each case

on all outstanding principal, interest, fees, and other amounts owing under the Prepetition 1L Term Loan Documents, and in each case at the applicable contractual default rate (which shall include, for the avoidance of doubt, an additional 1.00% for "PIK Interest" (as defined in the Prepetition 1L Term Loan Credit Agreement) and an additional 2.00% as a result of the existing Event of Default (as defined in the Prepetition 1L Term Loan Credit Agreement) thereunder) with payment in kind (the payments described in this subparagraph (c), the "**Prepetition 1L Term Loan Adequate Protection PIK Payments**").

      (d)    Prepetition 2L Term Loan Adequate Protection Liens.  Pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, the Prepetition 2L Term Agent, for itself and for the benefit of the Prepetition 2L Term Lenders, is hereby granted (effective and perfected upon the date of the Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements) a continuing, binding, enforceable, valid, perfected replacement security interest in and lien on (the "**Prepetition 2L Term Loan Adequate Protection Liens**" and, collectively with the Prepetition ABL Adequate Protection Liens and the Prepetition 1L Term Loan Adequate Protection Liens, the "**Adequate Protection Liens**") all of the DIP Collateral (it being understood that the Prepetition 2L Term Loan Adequate Protection Liens shall attach to Avoidance Proceeds) to secure the Adequate Protection Claims of the Prepetition 2L Term Secured Parties, subject and subordinate only to (i) the DIP Liens, (ii) to the extent required pursuant to the Prepetition ABL/Term Intercreditor Agreement, the Prepetition ABL Adequate Protection Liens, (iii) the Prepetition 1L Term Loan Adequate Protection Liens, (iv) the Carve Out and (v) the Non-Primed Excepted Liens.

      (e)    Prepetition Secured Parties Section 507(b) Claims.  Each Prepetition Secured Party is hereby granted, subject to the Carve Out, an allowed superpriority administrative

expense claim as provided for in section 507(b) of the Bankruptcy Code in an amount equal to such Prepetition Secured Party's Adequate Protection Claim that is not otherwise satisfied pursuant to this paragraph 13, if any, with, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified or ordered pursuant to any provision of the Bankruptcy Code (collectively, the "**507(b) Claims**").  The 507(b) Claims shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (excluding Avoidance Actions but including the Avoidance Proceeds).  The 507(b) Claims shall be subject and subordinate only to (i) the DIP Superpriority Claims, (ii) in the case of the 507(b) Claims of the Prepetition 1L Term Secured Parties and the Prepetition 2L Term Secured Parties, to the extent required pursuant to the Prepetition ABL/Term Intercreditor Agreement, the 507(b) Claims of the Prepetition ABL Secured Parties, (iii) in the case of the 507(b) Claims of the Prepetition 2L Term Secured Parties, the 507(b) Claim of the Prepetition 1L Term Secured Parties and (iv) the Carve Out.  Except to the extent expressly set forth in this Final Order or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the 507(b) Claims unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims have indefeasibly been paid in cash in full and all Commitments have been terminated.

(f)     Prepetition Secured Parties Fees and Expenses.  The Prepetition Secured Parties shall receive from the Debtors current cash payments of the reasonable and documented prepetition and postpetition fees and expenses payable to (i) the Prepetition ABL Agent, the Prepetition 1L Term Agent and the Prepetition 2L Term Agent, including Thompson Hine LLP and any local counsel, (ii) Brown Rudnick, LLP, as counsel to the Prepetition ABL Lenders and

(iii) the Secured Lender Group Professionals, which payments shall be made in the manner provided for in paragraph 18 below (the "**Adequate Protection Fees and Expenses**").

(g)     <u>Information Rights</u>.  The Debtors shall promptly provide the Prepetition ABL Agent, the Prepetition 1L Term Agent and the Prepetition 2L Term Agent, each on their own behalf and on behalf of the Prepetition ABL Lenders, the Prepetition 2L Term Lenders and the Prepetition 1L Term Lenders, respectively, with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Secured Parties under the DIP Documents (the "**Adequate Protection Information Rights**").  The Adequate Protection Information Rights shall survive any termination of the DIP Credit Agreement or the Commitments thereunder.  Following any termination of the DIP Credit Agreement or the Commitments thereunder, the Adequate Protection Information Rights, which shall survive any such termination of the DIP Credit Agreement or the Commitments thereunder, may be waived, amended, modified or extended from time to time by the Required ABL Lenders (prior to the ABL Satisfaction Date) and the Required 1L Term Lenders to the same extent the DIP Secured Parties could waive, amend, modify, or extend any required reporting under the DIP Documents prior to the termination of the DIP Credit Agreement.

(h)     <u>Milestones</u>.  Performance of the Case Milestones, in each case as may be waived, amended, modified or extended from time to time in accordance with the Restructuring Support Agreement or, to the extent the Restructuring Support Agreement is no longer in force and effect, for purposes of this Adequate Protection Obligation, by the Required ABL Lenders (prior to the ABL Satisfaction Date) and the Required 1L Term Lenders in their sole discretion. The Adequate Protection Obligations to comply with the Case Milestones shall be independent

from, and survive any termination of, the DIP Credit Agreement and the Restructuring Support Agreement.

14.     *Adequate Protection of Prepetition ABL Secured Parties*. The Prepetition ABL Adequate Protection Obligations (other than the Prepetition ABL Adequate Protection Payments), the Prepetition ABL Adequate Protection Liens, and the Prepetition ABL 507(b) Claims shall automatically release upon the ABL Satisfaction Date without further order of this Court.

15.     *Budget Maintenance*.  The use of borrowings and other extensions of credit by the Debtors under the DIP Documents and the use of Cash Collateral shall be limited in accordance with the Approved Budget.[7]  The initial Approved Budget shall depict, on a weekly and line item basis, for the first 13-week period, (a) (i) projected operating receipts, (ii) projected disbursements, including ordinary course operating expenses and bankruptcy-related expenses (including professional fees and expenses and any other fees and expenses relating to the DIP Documents), (iii) net cash flow, (iv) asset sales, (v) total available liquidity, and (b) the other items set forth therein and such other information requested by the Applicable Required Lenders, and such initial Approved Budget shall be approved by, and in form and substance reasonably satisfactory to, the Applicable Required Lenders (it being acknowledged and agreed that the budget attached to the Interim Order as **Schedule 1** is an Approved Budget and is satisfactory to the Required DIP Lenders under the DIP Credit Agreement).  For the avoidance of doubt, the Approved Budget shall include financial activity of Debtor and non-Debtor subsidiaries.  The Approved Budget shall be updated, modified or supplemented by the Debtors in accordance with the DIP Documents and this Final Order.  Each budget delivered to the Applicable Required Lenders shall be accompanied by such supporting documentation as reasonably requested by the Applicable Required Lenders

---

[7]     A copy of the initial Approved Budget is attached to the Interim Order as **Schedule 1**.

and shall be prepared in good faith based upon assumptions that the Debtors believe to be reasonable. A copy of any Approved Budget (or updated Approved Budget) shall be delivered to counsel for a Creditors' Committee (if appointed) and the U.S. Trustee after it has been approved in accordance with the DIP Documents and this Final Order.

16. *Budget Compliance*. The Debtors shall at all times comply with the Approved Budget (including the variances permitted under the DIP Credit Agreement); *provided* that, in the case of the DIP Fees and Expenses and the Adequate Protection Fees and Expenses, the Debtors shall pay such fees, costs and expenses in accordance with the DIP Documents, the Interim Order, and this Final Order without being limited by the Approved Budget and such payments shall not be calculated in any variance. The Debtors shall provide all reports and other information as required in the DIP Credit Agreement (subject to the grace periods provided therein), the Interim Order, and this Final Order. The Debtors' failure to comply with the Approved Budget or to provide the reports and other information required in the DIP Credit Agreement, the Interim Order and this Final Order within the time periods required shall constitute an Event of Default under the DIP Credit Agreement and an Event of Default hereunder, following the expiration of any applicable grace period set forth in the DIP Credit Agreement or hereunder and absent a waiver in accordance with the applicable DIP Credit Agreement or hereunder.

17. *Milestones*. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the required milestones (as attached as **Exhibit C** to the DIP Motion) (collectively, the "**Case Milestones**") as may be amended, waived or modified from time to time in accordance with the DIP Documents and the Restructuring Support Agreement. Any Case Milestone that would otherwise fall on a Saturday, Sunday or federal holiday will be treated in accordance with Bankruptcy Rule 9006. For the avoidance of doubt, the failure of the Debtors to

comply with any of the Case Milestones shall (a) constitute an Event of Default under (i) each of the DIP Credit Agreement and (ii) this Final Order; and (b) permit the Applicable Agent to exercise the rights and remedies provided for in this Final Order and the DIP Documents.

18.     *Payment of Fees and Expenses*.  The Debtors are authorized and directed to pay the DIP Fees and Expenses in accordance with the DIP Documents.  Subject to the review procedures set forth in this paragraph 18, payment of all DIP Fees and Expenses and Adequate Protection Fees and Expenses shall not be subject to allowance by the Court.  Professionals to be paid in respect of the DIP Fees and Expenses and the Adequate Protection Fees and Expenses shall not be required to comply with the U.S. Trustee fee guidelines, however any time that any professional seeks payment of fees and expenses from the Debtors, such professional shall provide summary copies of its invoices (which shall not be required to contain time entries and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the Creditors' Committee (if appointed) and the U.S. Trustee.  Any objections raised by the Debtors, the U.S. Trustee or a Creditors' Committee (if appointed) with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) days of the receipt of such invoice (the "**Review Period**").  If, after the Review Period, an objection remains unresolved, it will be subject to resolution by the Court.  Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors.  No professional to be paid in respect of the DIP Fees and Expenses and the Adequate Protection Fees and Expenses shall be required to file an application seeking compensation for services or

reimbursement of expenses with the Court.  Any and all fees, costs and expenses paid prior to the Petition Date by any of the Debtors to or on behalf of (a) the DIP Secured Parties, in connection with or with respect to the DIP Facility, and (b) the Prepetition Secured Parties, in connection with or with respect to these matters, are hereby approved in full and shall not be subject to avoidance, disgorgement or any similar form of recovery by the Debtors or any other person.

19.     *Reservation of Rights of Prepetition Secured Parties*.  Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court finds that the adequate protection provided in the Interim Order and herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties; *provided* that any of the Prepetition Secured Parties, upon a change in circumstances, may request further or different adequate protection, and the Debtors or any other party may contest any such request.  Subject to the Carve Out as set forth in this Final Order, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any diminution in value of their respective interests in the Prepetition Collateral during the Chapter 11 Cases or any Successor Cases.  Neither the provision of, nor the receipt by the Prepetition Secured Parties of, the adequate protection provided herein shall be deemed an admission that the respective interests of the Prepetition Secured Parties are adequately protected.  Further, the Interim Order and this Final Order shall not prejudice or limit the rights of the Prepetition Secured Parties to seek additional relief with respect to the use of Cash Collateral or for additional adequate protection.

20.     *Perfection of DIP Liens and Adequate Protection Liens*.

(a)     Without in any way limiting the automatically effective perfection of the DIP Liens and the Adequate Protection Liens granted hereunder, the DIP Secured Parties and the Prepetition Secured Parties are hereby authorized, but not required, to file or record (and to execute in the name of the DIP Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them hereunder, with any mortgages upon immovable property situated in Louisiana deemed to include, without limitation, a waiver of notice of nonpayment and demand for payment, waiver of appraisement, pact de non alienando, confession of judgment, sale by executory process, and the usual Louisiana security clauses. Whether or not the DIP Secured Parties or the Prepetition Secured Parties shall, in their sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of the Interim Order.  Upon the reasonable request of the DIP Agent (acting at the direction of the Required DIP Lenders), each of the Prepetition Secured Parties and the Debtor DIP Loan Parties, without any further consent of any party, is authorized and directed to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP

Liens, in accordance with the DIP Documents.  All such documents will be deemed to have been recorded and filed as of the Petition Date.  Notwithstanding the foregoing and any other provision in this Final Order, the Debtor DIP Loan Parties shall use reasonable best efforts to obtain the written consent of the Greater Lafourche Port Commission (the "**Port Authority**") with respect to the DIP Liens in respect of HOS Port, LLC, a Delaware limited liability company ("**HOS Port**").

(b)     A certified copy of the Interim Order and/or this Final Order may, in the discretion of the DIP Agent (acting at the direction of Required DIP Lenders), be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized and directed to accept such certified copy of the Interim Order and/or this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code shall be modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

21.     *Preservation of Rights Granted Under The Interim Order and This Final Order.*

(a)     Other than the Carve Out and other claims and liens expressly granted by the Interim Order and this Final Order (or permitted under the DIP Credit Agreement), no claim or lien having a priority superior to or *pari passu* with those granted by the Interim Order or this Final Order to the DIP Secured Parties and the Prepetition Secured Parties shall be granted or allowed while any of the applicable DIP Obligations or Adequate Protection Obligations remain outstanding, and the DIP Liens and Adequate Protection Liens shall not be:

(i)      subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtor DIP Loan Parties and their estates under section 551 of the Bankruptcy Code;

(ii)     subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise;

(iii)    subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the Debtor DIP Loan Parties; or

(iv)    subject or junior to any intercompany or affiliate liens or security interests of the Debtor DIP Loan Parties or any affiliates thereof.

(b)     The Debtors shall not seek, and it shall constitute an Event of Default if any of the Debtors, without the prior written consent of the Required DIP Lenders, the Required 1L Term Lenders, and the Required ABL Lenders (prior to the ABL Satisfaction Date), each in their sole discretion, seeks, proposes, supports or consents to or if there is entered or confirmed (in each case, as applicable), or if there occurs:  (i) a failure of the Debtors to make any payment under this Final Order to or on behalf of any of the Prepetition Secured Parties when due (subject to a three (3) Business Day cure period for all amounts other than payments on account of principal); (ii) a failure of the Debtors to (x) observe or perform any of the material terms or provisions contained in this Final Order or (y) comply with any covenant or agreement in this Final Order, in each case, in any material respect; (iii) any modification, amendment or extension of this Final Order; (iv) an order converting to a case under chapter 7 of the Bankruptcy Code or

dismissing any of the Chapter 11 Cases; (v) an order appointing a chapter 11 trustee in the Chapter 11 Cases; (vi) an order appointing an examiner with enlarged powers in the Chapter 11 Cases (beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code); (vii) except to the extent contemplated under the Restructuring Support Agreement or otherwise agreed by the applicable DIP Lenders, a plan of reorganization that does not provide for immediate payment in full in cash of all DIP Obligations (including the DIP Redemption Fee) and Prepetition 1L Term Loan Debt on the effective date of such plan;[8] or (viii) the sale of all or substantially all of the assets of the Debtors (except to the extent permitted under the DIP Documents), which does not provide for the payment in full in cash of all DIP Obligations (including the DIP Redemption Fee) and Prepetition 1L Term Loan Debt (other than any contingent indemnification or expense reimbursement obligations for which no claim has been made).  Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or that otherwise is at any time entered:  (x) the DIP Superpriority Claims, the DIP Liens, the 507(b) Claims, the Adequate Protection Liens, the Prepetition ABL Adequate Protection Payments, the Carve Out and the Prepetition ABL Liens (prior to the ABL Satisfaction Date), shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations (including the DIP Redemption Fee), Adequate Protection Obligations and Prepetition ABL Debt shall have been indefeasibly paid in full in cash, and such DIP Superpriority Claims, DIP Liens, 507(b) Claims, Prepetition ABL Adequate Protection

---

[8]     For the avoidance of doubt, the consent of the Specified Lenders shall be required for any plan that does not pay the DIP Redemption Fee in full in cash upon the effective date thereof; _provided_ that it is understood that the Specified Lenders have agreed that if (x) the Approved Prepackaged Plan is consummated and (y) in accordance with the terms of the Approved Prepackaged Plan, the DIP Facility is converted into or repaid from the proceeds of the Exit First Lien Facility (as defined in the Approved Prepackaged Plan), then the DIP Redemption Fee shall be deemed to have been cancelled and reissued as the Specified 1L Exit Fee (as defined in the Approved Prepackaged Plan) in the amount of $3,000,000 under the Exit First Lien Facility for the benefit of the Specified Lenders.  The terms of the Specified 1L Exit Fee are set forth in the Approved Prepackaged Plan.

Payments and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest; (y) the other rights granted by this Final Order shall not be affected; and (z) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect:  (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt by each of the DIP Agent, the Prepetition ABL Agent or the Prepetition 1L Term Agent, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority or enforceability of the DIP Liens or the Adequate Protection Liens.  Notwithstanding any such reversal, modification, vacatur or stay or any use of Cash Collateral, any DIP Obligations or any Adequate Protection Obligations incurred by the Debtor DIP Loan Parties to the DIP Secured Parties or the Prepetition Secured Parties, as the case may be, prior to the actual receipt by the DIP Agent, the Prepetition ABL Agent or the Prepetition 1L Term Agent, as applicable, of written notice of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this Final Order, the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Final Order and the DIP Documents.

(d)     Except as provided in this the Interim Order, this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and the Adequate Protection Obligations and all other rights and remedies of the

DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, dismissing any of the Chapter 11 Cases, terminating the joint administration of these Chapter 11 Cases or by any other act or omission; (ii) the entry of an order approving the sale of any Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases, and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtor DIP Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations. The terms and provisions of the Interim Order, this Final Order and the DIP Documents shall continue in these Chapter 11 Cases, in any Successor Cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the 507(b) Claims and the Adequate Protection Obligations and all other rights and remedies of the DIP Agents, the DIP Secured Parties and the Prepetition Secured Parties granted by the provisions of the Interim Order, this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations and the Prepetition Secured Debt are indefeasibly paid in full in cash (other than, with respect to the Prepetition Secured Debt, contingent obligations in respect of unasserted claims), as set forth herein and in the DIP Documents and the Prepetition Debt Documents, as applicable, and the Commitments have been terminated.

22.    *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order and this Final Order shall be binding upon

the Debtors in all circumstances and for all purposes.  The Debtors' stipulations, admissions, agreements and releases contained in the Interim Order and this Final Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these Chapter 11 Cases (including the Creditors' Committee, if any) and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless:

(a)    except as otherwise provided under any confirmation order and confirmed plan of reorganization in these Chapter 11 Cases, such committee or any other party in interest (subject in all respects to any agreement or applicable law that may limit or affect such entity's right or ability to do so), in each case, with requisite standing granted by the Court by no later than a date that is the later of (x) if a Creditors' Committee is not appointed, 75 days after entry of the Interim Order, (y) if a Creditors' Committee is appointed, 60 days after entry of this Final Order, unless any such later date has been agreed to, in writing, by the Prepetition ABL Agent (acting at the direction of the Required ABL Lenders), the Prepetition 1L Term Agent (acting at the direction of the Required 1L Term Lenders) or the Prepetition 2L Term Agent (acting at the direction of the Required Lenders (as defined in the Prepetition 2L Term Loan Agreement)), as applicable, and (z) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the "**Challenge Period**"), (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Debt or the Prepetition Liens or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or

defenses (collectively, a "**Challenge Proceeding**") against the Prepetition Secured Parties or their respective affiliates, subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives or other professionals or the respective successors or assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Debt Documents, the Prepetition Secured Debt, the Prepetition Liens or the Prepetition Collateral; and

(b)     there is a final non-appealable order in favor of the plaintiff in any such Challenge Proceeding; *provided* that any pleadings commencing any Challenge Proceeding shall set forth with specificity the basis for such challenge or claim and any challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred; and *provided further* that nothing contained herein shall preclude or otherwise limit the rights of the Creditors' Committee or any party to seek to intervene, or to appear and be heard under 11 U.S.C. § 1109(b).   For the avoidance of doubt, any informal discovery or examination conducted pursuant to Bankruptcy Rule 2004 relating to the foregoing matters or claims shall not be deemed or construed to be a Challenge Proceeding; *provided* that such informal discovery or examination shall be subject to the Investigation Budget (as defined herein).   If no such Challenge Proceeding is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then:

(i)     the Debtors' stipulations, admissions, agreements, and releases contained in the Interim Order or this Final Order shall be binding on all parties in interest, including, without limitation, the Creditors' Committee;

(ii)     the obligations of the DIP Loan Parties under Prepetition Debt Documents, including the Prepetition Secured Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case(s);

(iii)    the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, enforceable, non-avoidable and properly perfected security interests and liens;

(iv)    the Prepetition Secured Debt and the Prepetition Liens shall not be subject to any other or further claim or challenge by the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in these Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any other statutory or non-statutory committees appointed or formed in these Chapter 11 Cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties or their Representatives arising out of or relating to the Prepetition Debt Documents shall be deemed forever waived, released and barred.

If any such Challenge Proceeding is timely filed during the Challenge Period, the stipulations, admissions, agreements, and releases contained in the Interim Order or this Final Order, shall nonetheless remain binding and preclusive (as provided in the immediately preceding sentence and including clauses (i) through (iv) above) on any Creditors' Committee and on any other person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction.  Nothing in the Interim Order or this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Creditors' Committee or any other statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenge Proceedings with respect to the Prepetition Debt Documents, the Prepetition Secured Debt or the Prepetition Liens.  If the Debtors are timely notified of any potential Challenge Proceeding, the Debtors shall retain authority to prosecute,

settle or compromise any such Challenge Proceeding in the exercise of their business judgment and subject to any applicable further order of this Court.

23.      *Limitation on Use of DIP Financing Proceeds and Collateral*.  Notwithstanding anything herein or in any other order by this Court to the contrary, none of the DIP Loans, the Cash Collateral, the DIP Collateral, the Prepetition Collateral, the proceeds of any of the foregoing or the Carve Out may be used to:

(a)      permit the Debtors, or any other party in interest, or their representatives to challenge or otherwise contest or institute any proceeding to determine (x) the amount, validity, perfection or priority of security interests in favor of any of the DIP Secured Parties or the Prepetition Secured Parties or (y) the amount, validity or enforceability of the obligations of the Debtors under the DIP Documents or the Prepetition Debt Documents,

(b)      prevent, hinder or otherwise delay the DIP Secured Parties' or the Prepetition Secured Parties' assertion, enforcement or realization on the DIP Collateral in accordance with the DIP Documents, the Prepetition Debt Documents or the DIP Orders, other than to seek a determination that an Event of Default has not occurred or is not continuing,

(c)      seek to modify any of the rights granted to the DIP Secured Parties or the Prepetition Secured Parties under the DIP Orders, the DIP Documents or the Prepetition Debt Documents, in each of the foregoing cases without such parties' prior written consent, which may be given or withheld by such party in the exercise of its respective sole discretion,

(d)      pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an order of this Court (including, without limitation, hereunder) and (ii) permitted under the DIP Documents,

(e)      investigate, commence, prosecute or defend any claim, motion, proceeding, or cause of action, or assert any defense or counterclaim, against any of the DIP Secured Parties or the Prepetition Secured Parties, each in such capacity, and their respective agents, attorneys, advisors or representatives, including, in each case, without limitation, lender liability claims or claims pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise,

(f)      use or seek to use Cash Collateral or incur indebtedness in violation of the terms hereof or the DIP Documents,

(g)     sell or seek to sell any of the Prepetition Collateral or the DIP Collateral unless such sales are permitted under this Final Order or the DIP Documents;

*provided* that, notwithstanding anything to the contrary herein, the Creditors' Committee may use the proceeds of the DIP Loans and/or Collateral (including Cash Collateral) in an aggregate amount not to exceed $50,000 (the "**Investigation Budget**"), to investigate (i) the claims and liens of the Prepetition Secured Parties and (ii) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties; and *provided further* that neither the Debtors nor any Creditors' Committee shall use the DIP Loans, the Collateral (including Cash Collateral) and/or the Carve Out to prosecute any objections to claims or liens, or to pursue any claims, counterclaims, causes of action or defenses against any of the DIP Secured Parties.

24.     *Loss or Damage to Collateral*.  Nothing in the Interim Order, this Final Order, the DIP Documents or any other documents related to these transactions shall in any way be construed or interpreted to impose or allow the imposition upon the any DIP Secured Party of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business or in connection with their restructuring efforts.  Except to the extent of the DIP Secured Parties' gross negligence or willful misconduct, (a) the DIP Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person and (b) all risk of loss, damage or destruction of the Collateral shall be borne by the DIP Loan Parties.  Without limiting the generality of the foregoing, the indemnities, protections, rights and privileges of the DIP Secured Parties, as set forth in the DIP Documents, are incorporated herein by reference.

25.    *Final Order Governs*.  In the event of any inconsistency between the provisions of the Interim Order, this Final Order, the DIP Documents or any other order entered by this Court, the provisions of this Final Order shall govern.  Notwithstanding anything to the contrary in any other order entered by this Court, any payment made pursuant to any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this Final Order and the DIP Documents, including, without limitation, the Approved Budget.

26.    *Termination Date*.  On the Termination Date:  (a) all applicable DIP Obligations shall be immediately due and payable and all commitments to extend credit under the DIP Facility will terminate; (b) all authority to use Cash Collateral shall cease, except as expressly provided in paragraph 9(e) of this Final Order; and (c) the DIP Agent shall have the right to otherwise exercise rights and remedies under and in accordance with the DIP Documents and this Final Order.

27.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of the Interim order and this Final Order, including all findings herein, shall be binding upon all parties in interest in these Chapter 11 Cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any Creditors' Committee, any other statutory or non-statutory committee appointed or formed in these Chapter 11 Cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors), and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties and the Debtors and their respective successors and assigns; *provided* that the DIP Secured Parties and the Prepetition Secured Parties

shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

28.  *Limitation of Liability.*  In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, none of the DIP Secured Parties and the Prepetition Secured Parties shall (a) be deemed to be in "control" of the operations or participating in the management of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).  Furthermore, nothing in the Interim Order or this Final Order shall in any way be construed or interpreted to allow the imposition upon any of the DIP Secured Parties or the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of any of the DIP Loan Parties and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

29.  *Proofs of Claim.*  The DIP Secured Parties and the Prepetition Secured Parties shall not be required to file proofs of claim in any of the Chapter 11 Cases or Successor Cases for any claim of the Prepetition Secured Parties herein and the stipulations and findings set forth in the Interim Order and this Final Order shall constitute an informal proof of claim in respect thereof. Notwithstanding any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases to the contrary, each of (a) the Prepetition ABL

Agent, on behalf of itself and the other Prepetition ABL Secured Parties, (b) the Prepetition 1L Term Agent, on behalf of itself and the Prepetition 1L Term Lenders, and (c) the Prepetition 2L Term Agent, on behalf of itself and the Prepetition 2L Term Lenders, is hereby authorized and entitled, in its sole discretion, but not required, (x) to file (and amend and/or supplement, as it sees fit) proofs of claim and/or an aggregate proof of claim in each of the Chapter 11 Cases or Successor Cases for any claim allowed herein and (y) to file a single master proof of claim in Case No. 20-32679 (DRJ), and such master proof of claim shall be deemed filed as a claim against each of the Debtors.  Any proof of claim filed by the Prepetition ABL Agent, the Prepetition 1L Term Agent or the Prepetition 2L Term Agent shall be deemed to be in addition to and not in lieu of any other proof of claim that may be filed by any of the Prepetition ABL Secured Parties, the Prepetition 1L Term Secured Parties or Prepetition 2L Term Secured Parties, respectively.  Any order entered by the Court in relation to the establishment of a bar date in any of the Chapter 11 Cases or Successor Cases shall not apply to any claim of any of the DIP Secured Parties or the Prepetition Secured Parties.

30.     *Insurance*.  To the extent that the Prepetition ABL Agent, the Prepetition 1L Term Agent or the Prepetition 2L Term Agent is listed as loss payee under any of the Debtors' insurance policies, the DIP Agent shall also be deemed to be the loss payee under such insurance policies and shall act in such capacity and distribute any proceeds recovered or received in respect of any such insurance policies, <u>first</u>, to the payment in full of the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and, <u>second</u>, to the payment of the applicable Prepetition Secured Debt, subject to the Prepetition Intercreditor Agreements.

31.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately

upon entry hereof.  Notwithstanding Bankruptcy Rule 4001(a)(3), 6004(h), 6006(d), 7062 or 9014, any Local Bankruptcy Rule or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

32.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

33.    *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, in the event that any person or entity receives any Collateral, any proceeds of Collateral, any payment on account of a security interest in Collateral or any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and the termination of the Commitments in accordance with the DIP Documents, such person or entity shall be deemed to have received, and shall hold, any such payment or proceeds of Collateral in trust for the benefit of the DIP Secured Parties and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

34.    *No Superior Rights of Reclamation*.  Based on the continuation of the Prepetition Liens, the relation back of the DIP Liens, and the integrated nature of the DIP Facility and the Prepetition Debt Documents, in no event shall any alleged right of reclamation or return (whether asserted under section 546(c) of the Bankruptcy Code or otherwise) be deemed to have priority over the DIP Liens.

35.    *Automatic Stay*.  The giving of notice of termination by any party to the Restructuring Support Agreement shall not be a violation of the automatic stay of section 362 of

the Bankruptcy Code (and the Debtors hereby waive, to the fullest extent permitted by law, the applicability of the automatic stay as it relates to any such notice being provided).

36.     *Credit Bidding*.  In connection with any sale process authorized by the Court, the DIP Secured Parties and the Prepetition Secured Parties may credit bid up to the full amount of the applicable outstanding DIP Obligations or Prepetition Secured Debt (as applicable), in each case including any accrued interest and expenses (each a "**Credit Bid**"), in any sale of any DIP Collateral or Prepetition Collateral, as applicable, whether such sale is effectuated through section 363 or 1129 of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code, or otherwise, subject in each case to the rights and duties of the parties under the DIP Documents and the Prepetition Debt Documents, and to the provision of cash consideration sufficient to pay in full in cash any claims secured by senior liens on the collateral that is subject to such Credit Bid (including (x) in connection with any bid by one or more of the Prepetition Secured Parties, the payment in full in cash of the DIP Obligations and (y) in connection with any bid by one or more of the Prepetition 2L Term Secured Parties, the payment in full in cash of the Prepetition 1L Term Loan Debt).

37.     *Interim Order*.  Except as specifically amended, supplemented or otherwise modified hereby, all of the provisions of the Interim Order shall remain in effect and are hereby ratified by this Final Order.

38.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

39.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

40.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

 **Signed:  June 15, 2020.**

**DAVID R. JONES**
**UNITED STATES BANKRUPTCY JUDGE**